**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SALVATORE CHIMENTI** | : |
|     **Plaintiff,** | : |
|     v. | :   **CIVIL NO. 3:CV-01-0273** |
| **ROGER KIMBER, et al.,** | :   **(Judge Caputo)** |
|     **Defendants** | : |

**MEMORANDUM**

**Background**

    This civil rights action pursuant to 42 U.S.C. § 1983 was filed pro se by Salvatore Chimenti, an inmate presently confined at the Smithfield State Correctional Institution, Huntingdon, Pennsylvania.[1] Chimenti's action regards actions which purportedly transpired when he was previously confined at State Correctional Institution, Huntingdon, Pennsylvania ("SCI-Huntingdon").

    By Opinion dated June 8, 2005, the United States Court of Appeals for the Third Circuit concluded that Plaintiff sufficiently alleged claims of deliberate indifference to serious medical needs against two Defendants – former Secretary Martin Horn of the Pennsylvania Department of Corrections ("DOC")[2] and SCI-Huntingdon Medical Director Farrohk Mohadjerin, M.D., an employee of Wexford Health Sources, Inc. ("Wexford").[3]

---

[1] For the convenience of the reader of this Order in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. The Court accepts no responsibility for, and does not endorse, any product, organization, or content at any hyperlinked site, or at any site to which that site might be linked. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] By Order dated May 15, 2009, this Court granted Plaintiff's motion for substitution of party and added DOC's current Secretary Jeffrey Beard as a Defendant in his official capacity only. See Doc. 219, ¶ 2.

[3] The Court of Appeals affirmed the dismissal of Chimenti's allegations against the other Defendants as well as his claim that Dr. Mohadjerin took him off Interferon.

See Chimenti v. Kimber, 133 Fed. Appx. 833, 834 (3d Cir. 2005).

Thereafter, Plaintiff's request for leave to file an Amended Complaint regarding his surviving claims was granted. An Amended Complaint was submitted on August 8, 2005. See Doc. 76. Therein, Chimenti acknowledges that he has been incarcerated in the Commonwealth of Pennsylvania since 1983 and was transferred to SCI-Huntingdon during April, 1991. Plaintiff states that a liver biopsy conducted by the SCI-Huntingdon medical staff during 1991 tested positive for "Hepatitis C virus." Id. at ¶ 8. The Plaintiff was informed that his Hepatitis would be monitored through blood tests which would be performed every four (4) to six (6) months. Chimenti admits that he did not require active treatment for his condition between 1991 and 1997.

Doctor Mohadjerin referred Plaintiff to Doctor Michael F. Gaugler, D.O., a gastroenterologist, for examination on or about July 24, 1997. Doctor Gaugler conducted a liver biopsy in November, 1997 and thereafter recommended the initiation of Interferon treatment. Chimenti indicates that Doctor Mohadjerin ordered the Interferon treatment recommended by Dr. Gaugler. Although Interferon treatment was conducted with partial success over the course of the next three and one half (3 ½ ) months, it was purportedly discontinued by Defendant Mohadjerin on March 18, 1998 on the basis that Chimenti was not fully responding to the treatment. See id. at ¶ 16. It is next alleged that Doctor Mohadjerin rejected Dr. Gaugler's recommendation that the Interferon treatment be intensified and failed to provide any substitute treatment. According to the Amended Complaint, Mohadjerin purportedly made a determination that no further treatment would be provided until the Food and Drug Administration ("FDA") approved a new aggressive form of care, Rebetron.[4]

---

[4] Rebetron is a combination therapy of Interferon and Ribavirin. See Doc. 334, p. 2. By
(continued...)

The FDA approved the use of Rebetron on or about June, 1998.[5] Mohadjerin allegedly informed Plaintiff in June 1998 that despite the approval of the FDA, the inmate would not be provided with Rebetron until the DOC and Wexford agreed on a protocol for its use by the Pennsylvania state inmate population. See id. at ¶ 22. Thereafter, the Center for Disease Control ("CDC") issued a national protocol for Rebetron treatment in October, 1998. However, because DOC and Wexford Health Services still had not yet reached an agreement on the protocol for Rebetron treatment, Dr. Mohadjerin would not prescribe Rebetron for the Plaintiff.

Chimenti's Amended Complaint contends that Doctor Mohadjerin was deliberately indifferent to Plaintiff's medical needs by not pursuing or seeking approval of Rebetron treatment after the CDC issued the national protocol.[6] The DOC and Wexford Health Services did not reach an agreement on a protocol for providing Rebetron treatment to Pennsylvania state inmates until January, 2000.[7] Despite that development, Chimenti still did not start receiving Rebetron therapy until June 26, 2000.

Plaintiff claims that because he was not provided with any treatment between March 18, 1998 and June 26, 2000, his condition purportedly deteriorated to the point that his liver became severely damaged. Moreover, due to the prolonged period of inaction, the Rebetron treatment which was eventually provided was of no benefit and Chimenti now

---

[4](...continued)
letter dated May 13, 1998 Dr. Gaugler opined that use of Rebetron should be considered for Chimenti.

[5] The FDA issued a second more expansive Rebetron approval in December 1998.

[6] During the relevant time period, Wexford employed Doctor Mohadjerin as Medical Director of SCI-Huntingdon.

[7] An initial protocol was issued in December 1999.

purportedly requires a liver transplant.[8]

With respect to Secretary Horn, the Amended Complaint seeks relief on the basis that Horn "knew or should have known" of the need to implement "a speedy medical protocol for appropriate Rebetron treatment." Id. at ¶ 27. Despite that knowledge, Horn allegedly failed to take reasonable action. The Amended Complaint concludes that Doctor Mohadjerin was deliberately indifferent to Plaintiff's medical needs by discontinuing the Interferon treatment and by not pursuing or seeking approval of Rebetron treatment after the CDC issued a national protocol for Rebetron treatment in October, 1998. Chimenti seeks compensatory and punitive damages as well as injunctive relief, specifically, a transfer to the State Correctional Institution, Pittsburgh, Pennsylvania ("SCI-Pittsburgh") for the purpose of undergoing a liver transplant evaluation.

By Memorandum and Order dated February 13, 2006, Doctor Mohadjerin's motion for partial dismissal was granted. The Plaintiff's claim that Doctor Mohadjerin was deliberately indifferent for discontinuing his Interferon treatment was dismissed.[9] By Order dated May 15, 2009, Judge Vanaskie directed counsel for Doctor Mohadjerin to serve Plaintiff with complete responses to his outstanding discovery requests. See Doc. 219. The Order further provided that if complete and timely responses were not served, Chimenti could file a motion to compel discovery and/or sanctions as authorized under Federal Rule of Civil Procedure 37.

On September 10, 2009, Judge Vanaskie appointed Abhinav Humar, M.D., Director

---

[8] Chimenti started receiving Rebetron therapy on or about June 26, 2000. On or about December 13, 2000, Dr Kimber, who replaced Doctor Mohadjerin as SCI-Huntingdon's Medical Director, discontinued Plaintiff's Rebetron treatment because the prisoner was not responding favorably.

[9] It was also concluded that Plaintiff's claim that Doctor Mohadjerin was deliberately indifferent for not pursuing or seeking approval of Rebetron treatment after the CDC issued a national protocol for Rebetron treatment in October, 1998 should proceed.

of the Transplant Program at the University of Pittsburgh Medical Center, as an independent medical expert under Federal Rule of Evidence 706 for the purpose of preparing an independent medical expert report as to Chimenti's Hepatitis condition and his possible need for a liver transplant. Dr. Humar's report has been filed under seal. See Doc. 239.

A July 1, 2010 Memorandum and Order issued by Judge Vanaskie granted Plaintiff's motion for entry of default against Dr. Mohadjerin as a sanction for failure to provide complete discovery responses but acknowledged that "judgment in Chimenti's favor is not warranted at this time."[10]  Doc. 293, p. 6. As of that same date, Chimenti's action was reassigned to the undersigned.

On October 20, 2010, counsel entered an appearance on behalf of Plaintiff. See Doc. 314. Discovery has now closed. Secretary Horn and Dr. Mohadjerin have filed separate motions seeking entry of summary judgment. See Docs. 319 & 322. Both motions are ripe for consideration.

 **Discussion**

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c);

---

[10] Mohadjerin is no longer working at or associated with SCI-Huntingdon or any other correctional facility in Pennsylvania. See Doc. 142, ¶ 12. The Defendant is also no longer employed by Wexford. More importantly, Mohadjerin's current whereabouts are unknown. His counsel has previously indicated that it is believed that the doctor has left this country and is living somewhere in the Middle East.
    Counsel has further acknowledged that she has been unable to contact her client since entering her appearance in June, 2005 despite various attempts, including the hiring of three private investigators, to ascertain his current address, telephone number, etc. See Doc. 295-2, ¶¶ 9-12.

See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  Id. at 248.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

 Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  Celotex, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'"  Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

 The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)).  In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently

harmful to evidence deliberate indifference to a serious medical need.  See Spruill v. Gillis, 372 F.3d 218, 235-36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).  In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component).  Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d  Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

     A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Mines v. Levi, 2009 WL 839011 *7 (E.D. Pa. March 26, 2009)(quoting Colburn, 946 F.2d at 1023);  Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347.  "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

     There is no argument by either of the Remaining Defendants that Plaintiff's Amended Complaint fails to satisfy the serious medical need requirement with respect to the surviving deliberate indifference claims.  This Court likewise agrees that based upon the nature of Plaintiff's allegations it cannot be concluded that he was not suffering from an objectively serious medical need.

     The proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm."  Farmer v. Brennan, 511 U.S. 825, 841 (1994).  A complaint that a physician "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a

constitutional violation merely because the victim is a prisoner."[11]  Estelle, 429 U.S. at 106.

When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence.  See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).  It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation.  See id.  However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented.  See id.; Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008) ("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.").

**Secretary Horn**

> In its June 8, 2005 Opinion, the Third Circuit Court of Appeals stated as follows:
>
>> We conclude that the allegations that Horn knew about the Hepatitis C problem in the prisons and the importance of the protocol negotiations between the Department of Corrections (DOC) and Wexford, yet failed to timely issue the protocol are not so improbable or conclusory as to fail to state a claim.  On remand, the record can be developed with respect to what Horn knew about the prison system's Hepatitis C problem, what role he played in the negotiations, and the reasons for the delay.

Chimenti, 133 Fed. Appx. at 834.

Secretary Horn's summary judgement motion seeks relief on the grounds that:  (1) Chimenti cannot establish that Horn was personally involved in the creation and issuance of the Hepatitis C treatment protocol; (2) Plaintiff has not shown that there was a delay in the DOC's issuance of the Hepatitis C treatment protocol; and (3) even if there was a delay, it cannot be established that the delay caused Plaintiff any specific or quantifiable harm or damage.  See Doc. 326, p. 9.

---

[11] Simply put, "[a]llegations of negligent treatment are medical malpractice claims, and do not trigger constitutional protections."  Whooten v. Bussanich, No. 07-1441, slip op. at 4 (3d Cir. Sept. 12, 2007)(citation omitted).

8

**Personal Involvement**

Horn notes that Plaintiff was diagnosed with Hepatitis C in 1992 and treated with Interferon in 1997 and 1998. The Secretary adds in 1998 he delegated the responsibility for formation of a Hepatitis Task Force to Doctor Fred Maue, the DOC's Bureau of Health Care Services' Chief of Clinical Services.[12] Furthermore, "given the monumental nature of the project" which included negotiations with the three medical vendors who had contracted to provide health care services to the Pennsylvania state inmate population formulation of the protocol took longer then initially anticipated. Doc. 326, p. 2. Horn acknowledges that when it became clear that additional issues had developed, DOC Deputy Administrator John Shaffer, Ph.D was appointed as a liaison with the Task Force. See Doc. 326, p. 16.

As previously noted, the gist of the claim against Horn is that there was an unwarranted eighteen (18) month delay for non-medical reasons, from March 18, 1998 (when the CDC issued the national protocol) to June 26, 2000, before Chimenti received Rebetron therapy.[13]

Defendant Horn's initial summary judgment argument asserts that since the undisputed record establishes that he "had no personal involvement in the Taskforce [sic] meetings or in the development of the protocol" and was not medically trained, he was not personally involved in the alleged deliberate indifference and is entitled to entry of summary judgment. Doc. 326, p. 15. The Secretary further contends that although the DOC was "under his ultimate control" there is no evidence that he was aware of Chimenti's medical condition "and was certainly not in a position to argue or to impose medical or clinical

---

[12] Plaintiff states that Defendant Maue was asked to form the Task Force in January 1999 and its first meeting was conducted on March 3, 1999.

[13] It is also asserted that Horn agreed to a June 30, 2000 deadline for placing previously identified Hepatitis C inmates into treatment. Plaintiff began treatment just prior to expiration of the deadline.

9

conditions on the Taskforce [sic] or upon the three medical vendors" who were responsible for inmate medical care. Id.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims brought cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

The Amended Complaint asserts that Horn "knew or should have known" of the need to implement "a speedy medical protocol for appropriate Rebetron treatment." Doc. 76. at ¶ 27. Despite that knowledge, Horn allegedly failed to take reasonable action.

Secretary Horn's supporting brief admits that he "pushed and prodded the Taskforce to complete the comprehensive protocol as promptly as possible." Id. at p. 16. However, because the work was greater than realized due to some cost issues for the medical vendors, completion of the protocol took longer than the initially anticipated June 1999

implementation date. See id. It is also undisputed that Horn was provided with progress reports concerning the work of the Task Force from Deputy Shaffer.

In the present case, there are clearly factual disputes as to the degree of Secretary Horn's involvement in the work of the Task Force. Regardless of those factual discrepancies, it is nonetheless apparent that based upon Horn's own acknowledgment that he: initiated the idea of the Task Force; appointed Dr. Maue to lead the effort; pushed and prodded the Task Force; appointed a member of his executive staff, Deputy Shaffer, to act as his liaison with the Task Force and he received progress updates from his liaison, Deputy Shaffer, and that the Secretary was involved in a Task Force dispute regarding responsibility for the burden of medical costs and had ultimate oversight over the DOC's Task Force related actions and determinations. There also facts presented which could support a finding that Horn acquiesced or approved a June 30, 2000 deadline for placement of prisoners like Chimenti into Rebetron treatment.[14] Based on the above factors, there are sufficient facts alleged to show that Defendant Horn had personal involvement in the activities of the Task Force to satisfy the requirements of Rode. The initial argument for summary judgment will be denied.

**Treatment Delay**

Secretary Horn's second argument is that "Chimenti cannot establish that there was in fact any actionable delay" with respect to the issuance of the Hepatitis C protocol. Doc. 326, p. 2. Moreover, even if there was any delay it was not attributable to Horn. The Defendant adds that Chimenti was already was receiving Interferon treatment prior to the 1999 formation of the Task Force which was charged with a monumental task.

Chimenti counters that there is a question of fact as to whether the protocol's

---

[14] Plaintiff's admission into the Rebetron treatment program occurred shortly before expiration of said deadline.

11

prolonged development which resulted from implementation costs prevented him from receiving timely Rebetron treatment. See Doc. 334, p. 13. It is undisputed that the Task Force experienced delays, some which were associated with concerns about the financial costs associated with implementation of the Hepatitis treatment protocol.

As previously discussed, there is no dispute that Plaintiff's condition satisfies the serious medical need (objective component) of the two pronged deliberate indifference analysis. With respect to the subjective deliberate indifference component. It is equally established that Secretary Horn is a non-medical defendant who was not directly involved in Chimenti's medical treatment. As such, it would be appropriate for said Defendant to rely on the determinations made by the medical providers treating the prisoner. Likewise, the parties agree that Plaintiff was being treated for Hepatitis prior to the FDA and CDC approval of Rebetron treatment.

However, there are material facts in dispute as to two significant matters. First, whether the delay in the protocol negotiations were caused by a non-medical factor, specifically, financial disputes between the DOC and contracted medical vendors regarding payments of the costs associated with Rebetron. Plaintiff contends that because the DOC flipped flopped in its position regarding financial responsibility over payment of the costs related to hepatitis treatment, the progress of the Task Force in developing and implementing a protocol was delayed. Second, is the issue as to whether the eighteen (18) month delay in Chimenti's Rebetron treatment resulted at all or in part from the protracted approval of the protocol. If a jury were to accept Plaintiff's version of the facts related to those two issues, it is conceivable that Secretary Horn, although not directly involved in Plaintiff's medical care, was nonetheless deliberately indifferent to his serious medical need by engaging in conduct which delayed implementation of the Hepatitis protocol for non-medical reasons. Accordingly, since there are material facts in dispute regarding the concerns expressed by the Court of Appeals, entry of summary judgment is not

appropriate.

**Lack Of Harm**

Chimenti's Amended Complaint requests an award of compensatory and punitive damages as well as declaratory and injunctive relief. See Doc. 76, p. 11. Plaintiff indicates that he has suffered physical harm, specifically progression of his Hepatitis, including liver deterioration. He further maintains that he has suffered emotional distress due to his personal concerns regarding the alleged delays in his treatment.

Horn's final argument notes that three out of four medical experts involved in this matter have expressed the opinion that the 18 month delay at the core of this dispute "is casually linked to any damages alleged by Chimenti." Doc. 326, p. 20. The Defendant adds that only Plaintiff's expert, Doctor Bennett Cecil has attempted to "bridge the gap of total speculation on this issue." Id. Moreover, since Chimenti did not respond favorably to either the Interferon treatment or the six month course of Rebetron treatment, he cannot satisfy his burden of showing that he suffered any specific or quantitative harm as a result of the 18 month delay in the approval of the DOC's Rebetron protocol.

Plaintiff counters that Hepatitis C is a progressive disease which causes liver damage, and in some instances death. Chimenti adds that Rebetron was recommended in his case as early as May, 1998. Due to Hepatitis' progressive nature, the timing of treatment is important and there is a higher success rate when treatment is initiated at an early stage. The Plaintiff's opposing brief next asserts while the protocol negotiations were ongoing, his disease progressed from Stage 3 fibrosis to Stage 4 cirrhosis/fibrosis. See Doc. 334, p. 7. As a result of that increase, Plaintiff's chances to be successfully treated decreased and he is now untreatable.

In light of the differing opinions offered by the parties' respective expert witnesses, it is apparent that there is a factual dispute as to whether Plaintiff suffered any compensable

harm.[15]  Accordingly, the request for entry of summary judgment will be denied.

**Doctor Mohadjerin**

After concluding that the allegation that Dr. Mohadjerin took Chimenti off Interferon did not set forth a viable deliberate indifference claim, the Court of Appeals added that with respect to the remaining claims of deliberate indifference against Mohadjerin, "the record has not been developed with respect to what ability or responsibility Dr. Mohadjerin had to prescribe Rebetron before a protocol was approved." Doc. 74- 2, p. 6.

It is undisputed that SCI-Huntingdon Medical Director Doctor Mohadjerin discontinued Plaintiff's Interferon treatment on March 18, 1998 on the basis that Chimenti was not fully responding to the treatment.   According to the Amended Complaint, Mohadjerin purportedly made a determination that no further treatment would be provided until the FDA approved the use Rebetron, a new aggressive form of care.

Chimenti contends that Doctor Mohadjerin was deliberately indifferent to Plaintiff's medical needs by not pursuing or seeking approval of Rebetron treatment either after the FDA issued its approval or after the CDC approved the national protocol.[16]

As previously discussed, the DOC and Wexford  did not reach an agreement on the protocol for providing Rebetron treatment to Pennsylvania state inmates until January, 2000.  Despite that development, Chimenti still did not start receiving  Rebetron therapy

---

[15] Plaintiff correctly notes that the admissibility of Dr. Cecil's opinion has not been challenged via a Daubert motion. See Doc. 334, p. 25. In Daubert v. Merrell Dow Pharms, Inc., 509 U.S. 579, 589  (1993) the United States Supreme Court held that a trial judge must determine at the onset whether proposed expert testimony is reliable and relevant. The Court noted that an expert's opinion must be based on accepted scientific methods and procedures. In addition, Daubert set forth various factors which should be considered by courts when  assessing the reliability of scientific expert testimony.

[16] Mohadjerin asserts that the FDA's approval did not extend to individuals such as Chimenti who had previously been treated with Interferon.  However there are facts in dispute as to whether Plaintiff's Interferon treatment had been partially successful.

until June 26, 2000.

By Memorandum and Order dated July 1, 2010, Judge Vanaskie of this Court granted Plaintiff's motion requesting entry of default as a sanction against Doctor Mohadjerin for said Defendant's failure to provide complete discovery responses.[17] Doc. 293. However, the July 1, 2010 Memorandum and Order additionally observed that despite the entry of default, "judgment in Chimenti"s favor is not warranted at this time" because "Chimenti retains the burden of proving causation and damages" and "proving that an award of injunctive relief against Mohadjerin is appropriate." Id. at p. 6.

This Court agrees with Mohadjerin's observation that this whole case is premised upon Plaintiff's claim that he was harmed due to failure to being provided with Rebetron treatment in a timely manner. Doctor Mohadjerin also correctly notes that it is alleged that he was deliberately indifferent to Plaintiff's medical needs by not pursuing or seeking approval of Rebetron treatment between March 18, 1998 and June 25, 2000. See Doc. 320, p. 8.

Doctor Mohadjerin has filed a motion claiming entitlement to entry of summary judgment asserting that Plaintiff "remains unable to demonstrate any factual or legal basis for his claim of deliberate indifference." Id. at p. 4. His pending motion seeks relief on the grounds that: (1) there is no evidence that the doctor was responsible for, caused, or contributed to any delay in Chimenti's treatment as a result of the Rebetron protocol; and (2) Plaintiff cannot establish that he was harmed as a result of the time period which

---

[17] It is undisputed that Dr. Mohadjerin is no longer working at or associated with SCI-Huntingdon or any other correctional facility in Pennsylvania. See Doc. 142, ¶ 12. The Defendant is also no longer employed by Wexford. More importantly, Mohadjerin's current whereabouts are unknown.
    His counsel has indicated to this Court that it is believed that the doctor has left this country and is living somewhere in the Middle East. Counsel has further acknowledged that she has been unable to contact her client for a lengthy period of time despite various attempts, including the hiring of a private investigator.

15

passed between approval of the protocol and the initiation of his Rebetron treatment. See Doc. 320, p. 2.

**Protocol**

Mohadjerin initially asserts that he cannot be held liable for any harm caused by delay in the development of a protocol by the DOC and Wexford because he "had absolutely no involvement" in that process.[18] Doc. 320, p. 15. As noted by the Court of Appeals, "the record has not been developed with respect to what ability or responsibility Dr. Mohadjerin had to prescribe Rebetron before a protocol was approved." Doc. 74- 2, p. 6 (emphasis added).

The claims against Mohadjerin are twofold. First, Plaintiff raises a pre-protocol claim that Dr. Mohadjerin was deliberately indifferent for not following through on Doctor Gaugler's recommendations of May 1998 and January 1999 that Plaintiff receive Rebetron post FDA approval. In support of this claim Plaintiff cites to deposition testimony by Task Force member, Doctor Maue that "Defendant Mohadjerin did have the authority to prescribe Rebetron during the protocol's development." Doc. 329, p. 11. Also cited by Chimenti is a May 25, 1999 letter from John Shaffer to Wexford. See id.

The second post-protocol claim is that Mohadjerin was deliberately indifferent for not authorizing Rebetron treatment for Plaintiff until six (6) months after approval of the DOC/Wexford protocol and with the knowledge that said treatment had been already recommended by Doctor Gaugler.

Although Mohadjerin did not participate on the Task Force which formulated the DOC/Wexford protocol, that fact does not by itself entitle him to entry of summary judgment. The two allegations described above remain viable. See Lee v. Sewell, 159 Fed.

---

[18] Mohadjerin likewise indicates that Plaintiff has satisfied the serious medical need requirement.

Appx. 419, 421 (3d Cir. 2005)( prisoner's claim of being denied Hepatitis C medication for six months sets forth a viable claim of deliberate indifference) . It is additionally noted that has been evidence presented, specifically a letter to the DOC medical vendors from Dr. Maue dated January 15, 1999 which could support a claim that Doctor Mohadjerin could have initiated Rebetron treatment for Plaintiff post-FDA approval but prior to the completion of the DOC/Wexford protocol by submitting a request pursuant to the Wexford utilization review process. See Doc. 326-2 Section II, Exhibit A (indicating that Hepatitis C treatment could be provided during the ongoing Task Force negotiations via medical vendors' utilization review process).

Dr Maue has also submitted a declaration stating that regardless of the progress or lack thereof being made on the protocol by the Task Force, the medical vendors were still obligated to treat already identifies Hepatitis infected inmates under the provisions of their existing contract and utilization review process. See id. at Section IV, ¶ 38. A letter which was similar in substance was issued by Shaffer. See id. at Section V, Exhibit 2.

Maue further indicates that Chimenti was technically not subject to the screening provisions of the protocol because he was already undergoing Hepatitis treatment. See id. at ¶ 49. Based upon those factual considerations, there are clearly issues of material fact which undermine Mohadjerin's argument of entitlement to entry of summary judgment. However, this Court does agree that any attempt by Plaintiff to establish liability against Mohadjerin solely based upon the delay in the formulation of the DOC/Wexford protocol is baseless.

**Harm**

Mohadjerin's second summary judgment argument asserts that the Defendant is entitled to entry of summary judgment because Chimenti has not established that he sustained any harm as a result in the delay in receiving Rebetron treatment.

As discussed earlier, this Court has already addressed and denied herein a similar argument which was raised by Defendant Horn's summary judgment motion. Specifically, this Court has concluded that the expert medical opinions submitted by the parties have created a material factual dispute as to the issue of whether Plaintiff suffered any harm as a result of the delayed Rebetron treatment. Based upon that same rationale, Defendant Mohadjerin's similar summary judgment argument is not compelling.[19]

In conclusion, Defendant Mohadjerin's summary judgment motion will be granted solely with respect to any attempt by Plaintiff to establish liability against Doctor Mohadjerin solely based upon the delay in the formulation of the DOC/Wexford protocol. A pre-trial conference will be scheduled in this matter. An appropriate order will enter.

                                              /s/ A. Richard Caputo

                                              A. RICHARD CAPUTO
                                              United States District Judge

**DATED: September 19, 2011**

---

[19] It is further noted that Doctor Mohadjerin himself acknowledges that Plaintiff may "be able to establish an extremely modest chance that earlier treatment with Rebetron could have been effective." Doc. 320, pp. 23-24.

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SALVATORE CHIMENTI** | : |
| **Plaintiff,** | : |
| v. | : **CIVIL NO. 3:CV-01-0273** |
| **ROGER KIMBER, et al.,** | : **(Judge Caputo)** |
| **Defendants** | : |

**ORDER**

**AND NOW, THIS 19th DAY OF SEPTEMBER, 2011**, in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendant Martin Horn's motion for summary judgment (Doc. 322) is DENIED.
2. Defendant Farrokh Mohadjerin, M.D.'s motion for summary judgment (Doc. 319) is GRANTED IN PART.
3. Summary judgment is granted in favor of Defendant Mohadjerin solely to the extent that Plaintiff may be attempting to establish liability against Doctor Mohadjerin based upon the delay in the formulation of the DOC/ Wexford protocol. The motion is denied in all other respects.
4. A pre-trial conference will be scheduled in this matter.

                                                         **/s/ A. Richard Caputo**
                                                         **A. RICHARD CAPUTO**
                                                         **United States District Judge**